Case 4:10-cr-40049-JPG   Document 27   Filed 07/09/15   Page 1 of 7   Page ID #117

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,        )<br>                                                          )<br>                        Plaintiff,        )<br>                                                          )<br>vs.                                                    )<br>                                                          )<br>                                                          )<br>HELEEN ROOR-POTMAN,        )<br>    aka HELEEN POTMAN              )<br>    aka HEINTINA J. ROOR-POTMAN )<br>                        Defendant.      ) | CASE NUMBER  10CR40049-JPG |

**STIPULATION OF FACTS**

Comes now, Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Jennifer Hudson, Assistant United States Attorney, together with the Defendant, Heleen Potman[1], represented by her attorney, Bart Stepart, and hereby enter into the following Stipulation of Facts consistent with Section 1B1.3 of the United States Sentencing Guidelines pertaining to the defendant's relevant conduct.

The Scheme

1.  Beginning in the early 2000s and continuing through March 22, 2010, G.S. invested in on-line investment programs offered by PEDRO DISPENZA. G.S. stated that he mailed $50.00 to DISPENZA in The Netherlands. When the original program failed, DISPENZA told the members that their investments would be rolled into the next program. G.S. described these programs as High Yield Investment Programs and stated he would receive a "mother-load" when the programs finally paid out to investors. Stevens admitted investing in

---

[1] Ms. Potman has divorced from Mr. Roor. Ms. Potman would like to be recognized by the name Heleen Potman. The United States has added Heleen Potman to the caption of this and other documents, but not changed the official case title to avoid potential extradition-related consequences.

1

ACEInvest, MiAmigo Services, Champ Amigo, We Let Your Money Grow, Happy Plaza, and Dollar Dazzler. G.S. admitted that no program has been repaid, nor has DISPENZA stated when that would happen.

2. G.S. also admitted hosting internet teleconferences for DISPENZA to earn more program referrals bonuses. G.S. stated he provided prospective investors with information regarding the High Yield Investment Programs given to him by Dispenza. If a prospective member asked a question for which DISPENZA did not provide an answer, G.S. sent an email to the support personnel. G.S. stated that he stopped hosting the internet teleconferences or Skype conferences because DISPENZA failed to provide him with compensation.

3. Dutch citizen PIETER ROOR was sued by the SEC in the Southern District of New York due to an investment scheme operated between December 1998 and May 1999, called the "Oxford Savings Club." The United States Securities and Exchange Commission ("SEC") filed a lawsuit against ROOR in 1999, alleging that he participated in an Internet scam that fraudulently promised significant returns on risk-free investments. ROOR failed to return investors' funds.

4. Despite the civil lawsuit, ROOR continued to develop and operate a series of fraudulent on-line investment schemes. These schemes were represented and offered to on-line consumers as high-yield investment opportunities sometimes offering as much as a two percent return on investments per day.

5. After the lawsuit, ROOR obtained a Belizian passport with the name PEDRO DISPENZA. Dutch law enforcement officers retain the original PEDRO DISPENZA Belizian passport in their possession.

6. These on-line investment schemes were run using multiple names including Oxford Savings Club, AceInvest, MiAmigo Services, AceXchange, We Let Your Money Grow, Dollar Dazzler, Petheldia, X-Wire, and the Happy Society. All of these schemes, though slightly different in description, purported to earn the investor money. As investors learned money was not being returned, the "investment program" would close and re-open under another name.

7. It was further part of ROOR and **HELEEN POTMAN**'s (hereinafter Potman) scheme to conduct teleconferences on the internet, via a wire communication in interstate and foreign commerce through an international wire communication with the purpose of attracting new investors. ROOR routinely sought investors to conduct teleconferences for his benefit.

8. It was the object and purpose of the scheme to cause victims to wire or transfer funds to ROOR and **POTMAN** when ROOR knew and **POTMAN** should have known that the claimed investments would not be made. Thousands of investors sent ROOR and **POTMAN** in excess of $3,200,000.

9. To conceal the illegal nature of the on-line investment businesses, ROOR and **POTMAN** regularly incorporated businesses within the United States and in countries around the world. ROOR and **POTMAN** incorporated businesses in the United States, Great Britain, The Netherlands, Panama, and Belize.

10. On April 30, 2003, ROOR and **POTMAN** incorporated Private Clearing Brokers, Inc., in Delaware. The Certificate of Incorporation lists **POTMAN** as the corporation's director. Using the business name Private Clearing Brokers, **POTMAN** opened at least one bank account and applied for ITI Internet Services, Inc. PayByCheck ECP.

11. On December 21, 2004, AceXchange, Inc., was incorporated in Delaware by Harvard Business Services, Inc. Using the business name AceXchange, Inc., PEDRO

3

DISPENZA, aka ROOR, opened an account at Charter One Bank. In addition to accepting investor funds, ROOR transferred money from the Private Clearing Brokers' account to the AceXchange account. Additional funds were transferred to ABN Amro and other banks, but not for investors' benefit.

12. On April 21, 2010, ROOR and **POTMAN** incorporated Petheldia, LLC. in Wyoming. ROOR identified himself as the director of Petheldia and **POTMAN** provided the credit card to pay for the incorporation fees.

The Banks

13. The multi-nation investigation located traditional bank accounts in Latvia, Germany, including Deutsche Bank, 01155****, 1275****, The Netherlands, Great Britain, the United States, Belize, and Egypt. The accounts were opened by ROOR or **POTMAN** in the name of ROOR or **POTMAN** or in the name of one of many on-line investment schemes.

14. ROOR and **POTMAN** opened a bank account at Citizens National Bank on January 13, 2005, under the business name, AceXchange, Inc. PEDRO DISPENZA was listed as CEO. Through this account, ROOR and **POTMAN** received investor checks and wire transfers totaling approximately $259,000.00.

15. On September 5, 2003, ROOR opened a business checking account at United States Wells Fargo Bank branch in the name of Private Clearing Brokers, Inc. ROOR and **POTMAN** were authorized account signatories and received in excess of $250,000 of investor funds through this account.

16. The United States Federal Reserve Bank tracks all international wire transfers. During the period of the Indictment, investors sent $828,000 to Private Clearing Brokers. ROOR and **POTMAN** deposited most of the money into Private Clearing Broker's account at Deutsche

Bank number 127*****. The remainder was deposited into other accounts controlled by ROOR and **POTMAN**. The funds were not used to further investment interests of the investors'.

On-line Banking

17. In addition to traditional banking and to further their illegal on-line investment schemes, ROOR and **POTMAN** opened multiple on-line currency accounts including eGold, eBullion, PayPal, and others.

18. eGold is an internet based company. E-gold was a digital gold currency operated by Gold & Silver Reserve Inc. (G&SR). eGold members were permitted to open unregulated accounts, deposit funds, exchange funds into gold shares, and instantly transfer gold to other member's accounts. To receive currency from an eGold account, members had to exchange their gold through an exchange company.

19. ROOR and **POTMAN** opened many eGold accounts. These accounts include: Account 335*** that showed receipts exceeding $137,000 of investors' funds. Account 630*** that showed receipts exceeding $50,000 of investors' funds. Account 236*** that showed receipts exceeding $35,000 of investors' funds. None of the accounts reflect that ROOR or **POTMAN** invested money on behalf of their investors. Instead, the accounts demonstrate that ROOR and **POTMAN** moved funds through multiple accounts and, finally, liquidated the accounts through exchange companies and banks around the world.

20. Eight PayPal accounts are registered to ROOR as Pieter Roor, Peter Roor, and Pedro Dispenza. Between July 12, 2002 and October 2009, with most activity occurring in 2008, ROOR received $191,857.55 through PayPal.

The Victims

21.     **POTMAN** held an eGold account, 175****, in the name of MiAmigo Services. MiAmigo Services was one of the on-line fraudulent investment schemes.

22.     eGold records reflect that investors transferred $945,106.98 into account number 175****. eGold records also reflect that $75,081.47 in Ponzi payments were made to investors. $844,618.87 was transferred out of the account through currency exchange companies. Approximately $5,800 was transferred to other eGold accounts held by ROOR and **POTMAN**.

23.     eBullion records were located within the ROOR and **POTMAN** home in the Netherlands. These records reflect that victims sent $325,974.35.

24.     Beginning in September, 2006, H.D. invested approximately $150,000 in ROOR and **POTMAN**'s on-line scheme. At the time he invested, H.D. was told his investment had an interest rate of one to two percent per day and he would receive interest payments upon request. In furtherance of the scheme to defraud, H.D. received four Ponzi payments from ROOR and **POTMAN**.

25.     Ultimately, H.D. requested additional payments and a return of his principle investment. H.D. received neither.

Overt Acts

26.     That on October 2, 2006, H.D. of Carbondale, Jackson County Illinois transferred $30,900 to "Ace Invest," via a wire transfer in interstate commerce.

27.     That on January 16, 2007, H.D. of Carbondale, Jackson County Illinois received a Ponzi payment of $15,395.57 sent via wire transfer from a Deutsche Bank account belonging to ROOR and **POTMAN**.

28.     That on July 13, 2009, G.S., an investor, conducted a teleconference for ROOR and **POTMAN**. Based upon information received from ROOR and **POTMAN**, G.S. provided

listeners with information about ROOR and **POTMAN**'s latest scheme, We Let Your Money Grow. United States Postal Inspector Gholson attended this wire communication within the Southern District of Illinois.

29. That on February 24, 2010, ROOR conducted a teleconference on the internet, via a wire communication in interstate and foreign commerce with the purpose of attracting new investors to the Happy Society. United States Postal Inspector Gholson attended this wire communication within the Southern District of Illinois.

Substantive Counts

30. In furtherance of this scheme, on October 2, 2006, H.D. of Carbondale, Jackson County Illinois transferred $30,900 to "Ace Invest," via a wire transfer in interstate commerce.

31. Again on or January 16, 2007, H.D. of Carbondale, Jackson County Illinois received a Ponzi payment of $15,395.57 sent via wire transfer from a Deutsche Bank account belonging to ROOR and **POTMAN**.

**SO STIPULATED**

_____
HELEEN POTMAN
Defendant

_____
JENNIFER HUDSON
Assistant United States Attorney

_____
BART STAPERT
Counsel for the Defendant